**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| COGNITO THERAPEUTICS, INC. and MASSACHUSETTS INSTITUTE OF TECHNOLOGY, | ) ) ) | |
| | ) | C.A. No. |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| OPTOCEUTICS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiffs Cognito Therapeutics, Inc. ("Cognito") and the Massachusetts Institute of Technology ("MIT") (collectively, "Plaintiffs") bring this Complaint against Defendant OptoCeutics Inc. ("OptoCeutics") and allege, on personal knowledge as to their own actions and on information and belief as to the actions of others, as follows:

## NATURE OF THE CASE

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. § 271.

2.      As set forth in more detail below, OptoCeutics has been infringing Plaintiffs' patents, including at least United States Patent Nos. 10,265,497, 10,159,816, 10,682,490, 11,241,586, 10,960,225, 12,383,759, and 12,434,072 (the "'497 Patent," "'816 Patent," "'490 Patent," "'586 Patent," "'225 Patent," "'759 Patent," and "'072 Patent," respectively) (collectively, the "Asserted Patents") and continues to do so through the present date.

## THE PARTIES

3.     Cognito is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 55 Cambridge Parkway, Suite 102W, Cambridge, Massachusetts 02142.

4.     MIT is a not-for-profit, private research and educational institution organized and existing under the laws of the Commonwealth of Massachusetts, having a principal place of business at 77 Massachusetts Avenue, Cambridge, Massachusetts 02139.

5.     On information and belief, OptoCeutics is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 2120 University Avenue, Berkeley, California 94704.

## JURISDICTION AND VENUE

6.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §1 et seq., including 35 U.S.C. § 271.

7.     This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.     This Court has personal jurisdiction over OptoCeutics because, on information and belief, OptoCeutics is incorporated in the State of Delaware and has committed acts of infringement in this District, directly or through intermediaries, by, among other things, making, using, selling, offering for sale, and/or importing products that infringe the Asserted Patents, as alleged herein, in or from this District.

9.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400 because, *inter alia*, OptoCeutics is subject to personal jurisdiction in this District.

## BACKGROUND

A.    **MIT and Cognito's Breakthrough Discovery**

10.    MIT is a preeminent research and educational institution dedicated to advancing science, technology, and innovation.  Researchers at MIT have a long and heralded history of breakthrough discoveries that improve the lives of individuals across the world.

11.    Among those breakthroughs have been the development of new treatments for neurogenerative diseases like Alzheimer's disease and dementia.  One such MIT researcher responsible for breakthrough discoveries in this field is Dr. Li-Huei Tsai.  Dr. Tsai is the Picower Professor of Neuroscience in the Department of Brain and Cognitive Sciences at MIT.

12.    Dr. Tsai discovered a way to slow the rate of disease progression by increasing gamma wave activity in the brain through visual and auditory stimulation.  Using an *in vivo* mouse model, Dr. Tsai first discovered that mice subjected to visual and auditory stimulation at a specific 40 Hz frequency known as gamma oscillation had improved cognitive performance and reduced levels of amyloid β plaque accumulation—a widely-recognized marker for the progression of Alzheimer's disease.

13.    To protect these unique and innovative methods of treatment, MIT filed U.S. Provisional Patent Application No. 62/259,187 (the "'187 Provisional Application") on November 24, 2015.  The U.S. Patent and Trademark Office ("USPTO") has subsequently granted numerous patents stemming from this provisional application covering Dr. Tsai's breakthrough discovery, including the '497 Patent,'816 Patent, and '490 Patent.

14.    Specifically, on November 23, 2016, MIT filed U.S. Patent Application No. 15/360,637 (the "'637 Application"), claiming priority to the '187 Provisional Application.  On April 23, 2019, the USPTO issued the '497 Patent, titled "Systems and Methods for Treating

Dementia," based on the '637 Application.  The '497 Patent is assigned to MIT.  A true and correct copy of the '497 Patent is attached hereto as **Exhibit 1**.

15.     On July 11, 2017, MIT filed U.S. Patent Application No. 15/647,157 (the "'157 Application"), claiming priority to the '187 Provisional Application and the '497 Patent.  On December 25, 2018, the USPTO issued the '816 Patent, titled "Systems and Methods for Preventing, Mitigating, and/or Treating Dementia," based on the '157 Application.  The '816 Patent is assigned to MIT.  A true and correct copy of the '816 Patent is attached hereto as **Exhibit 2**.

16.     On April 4, 2019, MIT filed U.S. Patent Application No. 16/375,393 (the "'393 Application"), claiming priority to the '187 Provisional Application and the '497 Patent.  On June 16, 2020, the USPTO issued the '490 Patent, titled "Methods and Devices for Providing a Stimulus to a Subject to Induce Gamma Oscillations," based on the '393 Application.  The '490 Patent is assigned to MIT.  A true and correct copy of the '490 Patent is attached hereto as **Exhibit 3**.

17.     On October 10, 2017, MIT filed U.S. Provisional Patent Application No. 62/570,250 (the "'250 Provisional Application"), and on October 11, 2017, MIT filed U.S. Provisional Patent Application No. 62/570,929 (the "'929 Provisional Application").   On September 19, 2018, MIT filed U.S. Patent Application No. 16/135,938 (the "'938 Application"), claiming priority to the '250 Provisional Application and the '929 Provisional Application.  On February 8, 2022, the USPTO issued the '586 Patent, titled "Systems and Methods for Preventing, Mitigating, and/or Treating Dementia," based on the '938 Application.  The '586 Patent is assigned to MIT.  A true and correct copy of the '586 Patent is attached hereto as **Exhibit 4**.

18.     On October 10, 2018, MIT filed U.S. Patent Application No. 16/156,833 (the "'833 Application"), claiming priority to the '250 Provisional Application and the '929 Provisional

Application.  On March 30, 2021, the USPTO issued the '225 Patent, titled "Systems and Methods for Preventing, Mitigating, and/or Treating Dementia Via Visual Stimulation that Binds Higher Order Brain Regions, Reduces Neurodegeneration and Neuroinflammation, and Improves Cognitive Function," based on the '833 Application.  The '225 Patent is assigned to MIT.  A true and correct copy of the '225 Patent is attached hereto as **Exhibit 5**.

19.    Founded in 2016, Cognito emerged from the pioneering research at MIT conducted by Dr. Tsai and others and mission to bring this breakthrough discovery to patients by developing novel treatments for neurodegenerative diseases like Alzheimer's disease and dementia.  The pre-clinical, *in vivo* findings—that sensory stimulation could evoke gamma waves and slow the progression of Alzheimer's disease—formed the foundation for a company committed to transforming the lives of patients living with neurodegenerative diseases.  Notably, Cognito has built upon the pre-clinical findings by conducting a large-scale clinical trial to assess the effects of this sensory stimulation on human subjects.[1]  In this study, those treated with 40 Hz visual and auditory stimulation exhibited a marked slowdown in cognitive impairment and reduction in brain atrophy, as compared to those who had not been administered the treatment.

20.    MIT has exclusively licensed the '490 Patent, '497 Patent, and '816 Patent to Cognito since July 11, 2016.  MIT has exclusively licensed the '586 Patent and '225 Patent to Cognito since January 14, 2019.  The license grants Cognito the right to use the patents, as well as the right to enforce the patents against infringement by third parties.

---

[1] *See* D. Muoio, "Cognito Therapeutics touts positive Phase 2 results for device-delivered Alzheimer's treatment" (Mar. 10, 2021), available at: https://www.mobihealthnews.com/news/cognito-therapeutics-touts-positive-phase-2-results-device-delivered-alzheimers-treatment (last accessed Nov. 17, 2025); *see also* "Sensory Stimulation Systems," available at: https://www.alzforum.org/therapeutics/genus (last accessed Nov. 17, 2025).

21.     Cognito has also been awarded numerous patents by the USPTO—patents that further Cognito's mission of developing novel treatments for patients living with neurogenerative diseases like Alzheimer's disease and dementia.  On July 2, 2020,  Cognito filed U.S. Patent Application No. 16/919,975 (the "'975 Application"), claiming priority to, among others, U.S. Provisional Patent Application No. 62/423,517 (the "'517 Provisional Application").  On August 12, 2025, the USPTO issued the '759 Patent, titled "Methods and Systems for Neural Stimulation Via Visual, Auditory and Peripheral Nerve Stimulations," based on the '975 Application.  The '759 Patent is assigned to Cognito.  A true and correct copy of the '759 Patent is attached hereto as **Exhibit 6**.

22.     On April 22, 2024, Cognito filed U.S. Patent Application No. 18/642,364 (the "'364 Application"), claiming priority to, among others, the '517 Provisional Application.  On October 7, 2025, the USPTO issued the '072 Patent, titled "Methods and Systems for Neural Stimulation Via Visual, Auditory and Peripheral Nerve Stimulations," based on the '364 Application.  The'072 Patent is assigned to Cognito.  A true and correct copy of the '072 Patent is attached hereto as **Exhibit 7**.

**B.     Cognito's Spectris™ Device**

23.     Cognito implemented the technology claimed in the Asserted Patents in its flagship product—Spectris™.  Spectris™ is a non-invasive, at-home wearable headset that delivers synchronized 40 Hz light and audio stimulation to stimulate gamma waves in the brain.

24.     Spectris™ comprises a pair of headphones and an eyepiece that is worn like sunglasses.  Spectris™ emits 40 pulses per second of visual and audio signals to induce steady state gamma oscillations in the brain.

25.     Use of Spectris™ has been shown to have neuroprotective effects, such as improving synaptic connections between neurons and activating microglia, specialized immune cells responsible for brain health and development.  These neuroprotective effects serve to preserve cognition, daily functioning, and brain structure and to slow the progression of neurodegenerative diseases like Alzheimer's disease and dementia.

26.     Spectris™ also provides adjustable sensory stimulation capabilities that can tailor the visual and audio stimulations to the individual patient's needs and preferences.

27.     As such, Spectris™ practices "[a] method, comprising:  A) administering a non-invasive stimulus to a subject having a frequency of about 35 Hz to about 45 Hz to induce synchronized gamma oscillations in at least one brain region of the subject."  '490 Patent at Claim 1.  Spectris™ similarly applies "[a] method for treating dementia in a subject in need thereof, the method comprising:  administering a non-invasive stimulus to a subject to induce synchronized gamma oscillations in at least one brain region of the subject to treat dementia in the subject" (*see* '497 Patent at Claim 1) and "[a] method for treating Alzheimer's disease in a subject in need thereof, the method comprising: inducing synchronized gamma oscillations in at least one brain region of the subject, wherein inducing synchronized gamma oscillations comprises non-invasively delivering a visual or auditory signal having a frequency of approximately 35 Hz to approximately 45 Hz to the subject to treat Alzheimer's disease" (*see* '816 Patent at Claim 1).

28.     Spectris™ also practices "[a] method for treating dementia or Alzheimer's disease in a subject in need thereof, the method comprising:  A) non-invasively delivering chronic visual stimuli having a frequency of about 30 Hz to about 50 Hz to the subject to entrain synchronized gamma oscillations in multiple brain regions of the subject including at least the prefrontal cortex (PFC) and the hippocampus of the subject, wherein A) comprises non-invasively delivering the

chronic visual stimuli having the frequency of about 30 Hz to about 50 Hz to the subject to:  A1) concurrently entrain synchronized gamma oscillations in the multiple brain regions of the subject including at least the prefrontal cortex and the hippocampus of the subject; A2) coordinate neuronal activity between the multiple brain regions of the subject including at least the prefrontal cortex and the hippocampus of the subject; A3) reduce neurodegeneration in the multiple brain regions of the subject including at least the prefrontal cortex and the hippocampus of the subject; A4) reduce neuroinflammation in the multiple brain regions of the subject including at least the prefrontal cortex and the hippocampus of the subject; A5) ameliorate aberrantly modified genes and proteins involved in at least one of membrane trafficking, intracellular transport, synaptic function, neuroinflammation, apoptotic process, and DNA damage in the multiple brain regions of the subject including at least the prefrontal cortex and the hippocampus of the subject; and A6) enhance learning and memory of the subject" (*see* '225 Patent at Claim 46) and "[a] method for treating dementia or Alzheimer's disease in a subject in need thereof, the method comprising:  A) non-invasively delivering combined auditory and visual stimuli having a frequency of 20 Hz to 60 Hz to the subject, wherein the auditory and visual stimuli are synchronously aligned, to induce synchronized gamma oscillations in at least one brain region of the subject" (*see* '586 Patent at Claim 1).

29.    Spectris™ further practices "[a] system for treating a symptom of Alzheimer's disease or dementia in a subject in need thereof, the system comprising:  (a) a stimulus-emitting component capable of providing a non-invasive auditory stimulus or a non-invasive visual stimulus to said subject, wherein said stimulus-emitting component is configured to emit a wave having a frequency band from about 30 to about 60 Hertz (Hz); (b) one or more processors, individually or collectively programmed to execute a set of instructions … (c) a memory device

configured to store said set of instructions; and (d) [a] feedback sensor" (*see* '759 Patent at Claim 1) and "[a] method for treating mild cognitive impairment or Alzheimer's disease or benefiting a cognitive function of a brain of a subject in need thereof via a system, the method comprising:  (a) using a first light source to generate a first light pulse and using a second light source to generate a second light pulse, wherein said first light source or said second light source comprises a filtering component configured to selectively transmit a portion of an initial spectral range of the first light pulse or the second light pulse; (b) determining an attention level of the subject by:  (i) performing eye tracking of an eye of the subject via a feedback sensor; or (ii) determining an orientation of at least one of a head or a body of the subject; and (c) emitting the first light pulse and the second light pulse to the subject, wherein the first light pulse and the second light pulse are emitted at a 40 Hertz (Hz) frequency, thereby slowing a progression of mild cognitive impairment or Alzheimer's disease, or thereby benefiting the cognitive state or function of the brain of the subject; wherein the determining the attention level of the subject comprises comparing, via a feedback monitor, a direction or a movement of an eye of the subject to a historical eye direction or an eye movement of the subject based on a threshold" (*see* '072 Patent at Claim 1).

30.    In 2020, Spectris™ received U.S. Food and Drug Administration ("FDA") Breakthrough Device Designation for the treatment of cognitive and functional symptoms associated with Alzheimer's disease.[2]

---

[2] *See* "Cognito Therapeutics Receives FDA Breakthrough Device Designation for Next-Generation Digital Therapeutic in Alzheimer's Disease" (Jan. 12, 2021), available at: https://www.businesswire.com/news/home/20210112005364/en/Cognito-Therapeutics-Receives-FDA-Breakthrough-Device-Designation-for-Next-Generation-Digital-Therapeutic-in-Alzheimer%E2%80%99s-Disease (last accessed Nov. 17, 2025).

31.     In 2022, Cognito conducted a large-scale clinical trial, the Phase 2 OVERTURE Study.  Patients in the Phase 2 OVERTURE Study experienced a 69% slowing of brain volume loss and a 77% slowing of functional decline, compared to the control group, and without serious treatment-limiting side effects.[3]

32.     Cognito has since completed enrollment in its pivotal HOPE study, a randomized, double-blind, sham-controlled clinical trial involving 673 Alzheimer's disease patients across seventy sites.  The HOPE study is the largest-ever medical-device study targeting the treatment of Alzheimer's disease.[4]  Participants in the HOPE study are instructed to use Spectris™ daily for twelve months.

## C.     OptoCeutics's Infringing Products and Activities

33.     OptoCeutics sells products for the treatment of neurodegenerative diseases like Alzheimer's disease and dementia.[5]

---

[3] *See* https://www.cognitotx.com/about (last accessed Nov. 17, 2025); E. Mullin, "A New Headset Aims to Treat Alzheimer's with Light and Sound," Wired (Mar. 6, 2024), available at: https://www.wired.com/story/cognito-wearable-device-light-sound-treatment-alzheimers-dementia/ (last accessed Nov. 17, 2025).

[4] *See* "Cognito Therapeutics Completes Enrollment in HOPE Pivotal Study of Spectris™ AD Therapy for the Treatment of Patients with Alzheimer's Disease" (July 1, 2025), available at: https://www.businesswire.com/news/home/20250701375054/en/Cognito-Therapeutics-Completes-Enrollment-in-HOPE-Pivotal-Study-of-Spectris-AD-Therapy-for-the-Treatment-of-Patients-with-Alzheimers-Disease?utm (last accessed Nov. 17, 2025).

[5] *See* https://optoceutics.com/ (last accessed Nov. 17, 2025).



34.    OptoCeutics markets and sells its "EVY" product to "support those living with Alzheimer's [disease] or dementia."  The EVY features a "40 Hz Light Therapy" device that can be used alone or in combination with a "40 Hz Sound Stimulation" delivered by a pair of headphones and a mobile application to "tie[] it all together."[6]



---

[6] *See* https://optoceutics.com/evy/ (last accessed Nov. 17, 2025).



35.     The EVY uses 40 Hz light to provide "effective brainwave entrainment without discomfort."[7]

36.     The EVY also includes a "Breath 40 . . . audio track" that can be listened to with a pair of headphones.[8]   The "40 Hz Sound Stimulation" provided by the Breath 40 audio track provides "brainwave entrainment" to "engage[] the brain's auditory pathways . . . enhancing cognitive function for those living with Alzheimer's or dementia."[9]



<hr />

[7] *See id.*
[8] *See id.*
[9] *See id.*

## How do you experience EVY?

**40 Hz Multi-Sensory Experience**
Place your EVY device on a flat surface, 3 feet away and connect your own headphones to the EVY INSIGHT app.

**Once A Day, Every Day**
One hour a day is enough to start increasing your brain health. Use it when you're eating, working, watching TV and incorporate it into your everyday life.

**Real Results**
Use the EVY INSIGHT App to control the device brightness, track your usage, see your history and more importantly, witness the impact it makes on your cognitive wellness.

**EXPERIENCE EVY TODAY**



## How Does EVY Work?

SUPPORT FOR ALZHEIMER'S AND DEMENTIA

### Your eyes are the gateway to your brain

When living with Alzheimer's and Dementia, the levels of gamma brain wave activity decrease, which can affect memory and other cognitive functions.

EVY stimulates and increases the activity of the gamma brain waves with light, through a process called light-based brain stimulation.

Watch the video to learn how.

**READ MORE**

Alzheimer's and Dementia.
Find light in the darkness.

OPTOCEUTICS

UNDERSTANDING THE BRAIN

### The power of gamma brainwaves

Brainwaves are voltage oscillations in the brain that emerge from the synchronous firing of braincells called neurons. They can be used to measure how well the brains network is communicating.

A reduction in the energy of the gamma brainwaves has been correlated to a decrease in functional decline. The brain stimulation provided by EVY elevates gamma brainwaves.

Watch the video to learn how.

**READ MORE**

What are GAMMA WAVES?

OPTOCEUTICS

13

37.     The EVY light device, sound stimulation and headphones, and mobile application

provide a "40 Hz multi-sensory platform of light, sound and tech."[10]



38.     On information and belief, the EVY light device, sound stimulation and

headphones, and mobile application treat Alzheimer's disease through entraining synchronized

gamma oscillations in the hippocampus.[11]

---

[10] *See* C. Ravn, "40Hz Light and Sound Therapy Treatment for Alzheimer's Disease" (Feb. 2, 2024), available at: https://optoceutics.com/40hz-frequency-light-sound-therapy-treatment-device-for-alzheimers-disease/?srsltid=AfmBOopKDb1BKbtz8OZ2LrtQDGvRbFTiOJpB-0U1KN8i91AgPoKFayrS (last accessed Nov. 17, 2025); *see also* https://optoceutics.com/evy (last accessed Nov. 17, 2025).

[11] *See* C. Ravn, "What Part of the Brain Does Alzheimer's Affect (Memory Impact & Risks" (Mar. 20, 2025), available at: https://optoceutics.com/what-part-area-of-the-brain-does-alzheimers-disease-affect/?srsltid=AfmBOoqlY_oFPp5RLLg5kaclWBUo2mzIfCZiNrYK8rAHS1hknVu42q8e (last accessed Nov. 17, 2025).

> **KEY TAKEAWAYS**
>
> 1. Alzheimer's primarily begins its damage in the hippocampus and entorhinal cortex, regions vital for memory formation and retrieval, leading to early symptoms like short-term memory loss.
> 2. As Alzheimer's progresses, it extends beyond the initial regions to affect the cerebral cortex and other brain structures, resulting in a broader range of cognitive impairments, including language difficulties, reasoning problems, and behavioral changes.
> 3. The disease's progression is characterized by the accumulation of amyloid plaques and tau tangles, causing neuronal damage and brain atrophy, which ultimately lead to significant functional decline and the diverse symptoms associated with Alzheimer's.

39.    On information and belief, the EVY light device, sound stimulation and headphones, and mobile application treat Alzheimer's disease through entraining synchronized gamma oscillations in the prefrontal cortex.[12]

> # What Part Of The Brain Controls Long-Term Memory?
>
> A key cognitive ability, long-term memory is created, stored, and recalled in several brain regions working together. New memories are stored long-term in the hippocampal area. This framework is vital for episodic memory, which recalls specific events and experiences. Studies show that the hippocampal encoding of memories can be enhanced by exercise, therefore strengthening episodic memory.
>
> Multiple areas of the brain are responsible for storing long-term memories. The anterior cingulate cortex helps preserve long-term memories by altering DNA methylation patterns in the hippocampal region, which influences gene expression and stabilizes them. These variances in gene expression might explain long-term memory storage.
>
> Various brain areas are involved in memory creation and storage. The hippocampus encodes and shapes fresh memories. For long-term storage, these memories migrate progressively to different brain areas. This transfer mechanism may be related to the prefrontal and anterior cingulate cortex, which combine and stabilize long-term memories.
>
> Long-term memory is mediated in several different brain locations. The development of episodic memory depends critically on the hippocampus. However, the prefrontal cortex accesses and manipulates these memories, guiding past experience-based planning and decision-making. Although linked with motor functions, the cerebellum also supports procedural memory, acquiring skills and behaviors.

---

[12] *See* C. Ravn, "Where is Long-Term Memory Stored in the Brain: Functions and Memory Networks," available at: https://optoceutics.com/where-is-long-term-memory-stored-control-in-the-brain-part/?srsltid=AfmBOopSDoFou3waQDGEp1rqakznclJsj4AMWzkb00xPwucxdudAOQHM (last accessed Nov. 17, 2025).

40.    OptoCeutics devices and technology, including the EVY light device, sound stimulation and headphones, and mobile application, rely on and use the ground-breaking inventions of the Asserted Patents.

41.    OptoCeutics's own website cites to numerous articles discussing how the use of 40 Hz light and/or sound therapy is effective in treating Alzheimer's disease or dementia.[13]

42.    For example, OptoCeutics's website displays and provides a web link to scientific papers authored by Dr. Tsai and others,[14] including the foundational paper for the research.[15,16]

43.    As another example, OptoCeutics sends marketing materials, such as the one depicted below, touting Dr. Tsai's research as technological bases for its products.  The marketing material states that a recent study suggests 40 Hz light and sound stimulation may help Alzheimer's patients, and that EVY delivers "the same 40 Hz light and sound stimulation"[17]:

---

[13] *See* https://optoceutics.com/research/ (last accessed Nov. 17, 2025).

[14] *See, e.g.*, *id.* (citing Martorell et al., "Multi-sensory Gamma Stimulation Ameliorates Alzheimer's-Associated Pathology and Improves Cognition," Cell, 177(2):256-271.e22 (Apr. 4, 2019); Adaikkan et al., "Gamma Entrainment Binds Higher-Order Brain Regions and Offers Neuroprotection," Neuron, 105(5):929-943.e8 (June 5, 2019)).

[15] *Id.* (citing Iaccarino et al., "Gamma frequency entrainment attenuates amyloid load and modifies microglia," NATURE, 540:230-235 (Dec. 7, 2016)).

[16] Dr. Tsai has no present or previous affiliation with OptoCeutics.

[17] *See* https://45332551.hs-sites.com/recent-study-shows-added-support-for-40-hz-in-alzheimers-care?ecid=ACsprvu-j1N_pm8jVF1h3ZULQaUBr1GfgyHgWly_e_bLkeJ2YxV5qfQOVnakjAgnwN81YFuw3BkQ&utm_campaign=Newsletter%202024&utm_medium=email&_hsenc=p2ANqtz-80GAZBspPa5m-oJ9RqWjtTtG7ZtE0Z-tl0TKWpA7oF1pdoblA2TOFE4DX3yerTiCt5b9L5rwU1FtZcjWd4RLxChwmMTopEyl81R-AWIDWJOVM2hIM&_hsmi=387752111&utm_content=387753648&utm_source=hs_email (last accessed Nov. 17, 2025).



44.     Clicking on the "Read More" button shown above sends the user to an MIT Picower

Institute webpage describing Dr. Tsai's research.[18]

---

[18] "Small study suggests 40Hz sensory stimulation may benefit some Alzheimer's patients for years" (Oct. 27, 2025), available at: https://picower.mit.edu/news/small-study-suggests-40hz-sensory-stimulation-may-benefit-some-alzheimers-patients-years?utm_campaign=Newsletter%202024&utm_source=hs_email&utm_medium=email&utm_content=387752111&_hsenc=p2ANqtz-80WixzyfE-mEspHvzRHGBpA-KmxD_vG2P0oeEGdq7Xp2Tttft-YAMZJrSK4k29kdgoFPY3zVNcs9IvoCfaws5UJdXabFDxXZsvPuwliaHSpYoapFI     (last accessed Nov. 17, 2025).

## CLAIM 1: INFRINGEMENT OF THE '490 PATENT

45.     Plaintiffs reallege and incorporate the allegations of the preceding paragraphs of this complaint as though fully stated herein.

46.     MIT is the owner of and has right, title, and interest in and to the '490 Patent. Cognito has an exclusive license from MIT to make, use, sell, offer to sell, and import any product embodying the '490 Patent in and into the United States.  Cognito also has the right to prosecute third party infringement of the '490 Patent.

47.     The claims of the '490 Patent are valid and enforceable.

48.     The '490 Patent claims and describes a method and system for "administering a non-invasive stimulus to a subject having a frequency of about 35 Hz to about 45 Hz to induce synchronized gamma oscillations in at least one brain region of the subject." *See, e.g.*, '490 Patent at Claim 1.

49.     On information and belief, OptoCeutics has been and is now infringing one or more claims of the '490 Patent in the United States by, among other things, directly or through intermediaries, making, using, selling, and/or offering for sale the EVY light device, sound stimulation and headphones, and mobile application, covered by at least Claim 1 of the '490 Patent. For example, these products administer a "[a] method, comprising:  A) administering a non-invasive stimulus to a subject having a frequency of about 35 Hz to about 45 Hz to induce synchronized gamma oscillations in at least one brain region of the subject." *See supra*, ¶¶ 33-44.

50.     OptoCeutics infringes the '490 Patent because it makes, uses, sells and/or offers for sale the methods and/or devices claimed in the '490 Patent.  For example, OptoCeutics infringes at least Claim 1 of the '490 Patent by using the EVY light device, sound stimulation and headphones, and mobile application.  OptoCeutics is, therefore, directly infringing, literally and/or

under the doctrine of equivalents, the '490 Patent. OptoCeutics is thus liable for direct infringement of the '490 Patent pursuant to 35 U.S.C. § 271(a).

51. OptoCeutics also contributes to infringement of at least Claim 1 of the '490 Patent under 35 U.S.C. § 271(c) inasmuch as the products offered for sale and sold by OptoCeutics are a component of a machine or apparatus used in practicing a patented process or machine, constituting a material part of the '490 Patent's patented methods and devices, knowing the same to be especially made or especially adapted for use in infringement of the '490 Patent.

52. OptoCeutics also actively encouraged and continues to actively encourage its business partners and/or customers to use its products in an infringing manner. OptoCeutics has encouraged and continues to encourage infringement with a specific intent to cause its business partners and/or customers to infringe. OptoCeutics's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

53. OptoCeutics's direct infringement, contributory infringement, and/or inducement of infringement have irreparably harmed Plaintiffs. On information and belief, OptoCeutics will continue to infringe the '490 Patent unless enjoined.

54. On information and belief, OptoCeutics has infringed, and continues to infringe, the '490 Patent with full knowledge of the patent and its scope, and OptoCeutics's infringement of the '490 Patent is intentional, knowing, and willful.

55. For example, OptoCeutics's website compares the EVY light device, sound stimulation and headphones, and mobile application against products from other companies, including Cognito.[19] Thus, OptoCeutics is fully aware of Cognito and Spectris™.

---

[19] *See* https://optoceutics.com/evy/ (last accessed Nov. 17, 2025).



56.     As another example, OptoCeutics references research conducted by one or more inventors of the '490 Patent. *See supra*, ¶¶ 33-44.

57.     OptoCeutics's conduct entitles Plaintiffs to an award of enhanced damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285.

58.     Pursuant to 35 U.S.C. § 284, Plaintiffs are entitled to damages adequate to compensate it for past infringement of the '490 Patent.

59.     This case is "exceptional" within the meaning of 35 U.S.C. § 285, and Plaintiffs are entitled to an award of attorneys' fees.

## CLAIM 2: INFRINGEMENT OF THE '497 PATENT

60.    Plaintiffs reallege and incorporate the allegations of the preceding paragraphs of this complaint as though fully stated herein.

61.    MIT is the owner of and has right, title, and interest in and to the '497 Patent. Cognito has an exclusive license from MIT to make, use, sell, offer to sell and import any product embodying the '497 Patent in and into the United States.  Cognito also has the right to prosecute third party infringement of the '497 Patent.

62.    The claims of the '497 Patent are valid and enforceable.

63.    The '497 Patent claims and describes "[a] method for treating dementia in a subject in need thereof, the method comprising: administering a non-invasive stimulus to the subject to induce synchronized gamma oscillations in at least one brain region of the subject to treat dementia in the subject." *See, e.g.*, '497 Patent at Claim 1.

64.    On information and belief, OptoCeutics has been and is now infringing one or more claims of the '497 Patent in the United States by, among other things, directly or through intermediaries, making, using, selling, and/or offering for sale the EVY light device, sound stimulation and headphones, and mobile application, covered by at least Claim 1 of the '497 Patent. For example, these products practice "[a] method for treating dementia in a subject in need thereof, the method comprising: administering a non-invasive stimulus to the subject to induce synchronized gamma oscillations in at least one brain region of the subject to treat dementia in the subject." *See supra*, ¶¶ 33-44.

65.    OptoCeutics infringes the '497 Patent because it uses the methods claimed in the '497 Patent.  For example, OptoCeutics infringes at least Claim 1 of the '497 Patent by using the EVY light device, sound stimulation and headphones, and mobile application.  OptoCeutics is,

therefore, directly infringing, literally and/or under the doctrine of equivalents, the '497 Patent. OptoCeutics is thus liable for infringement of the '497 Patent pursuant to 35 U.S.C. § 271(a).

66.     OptoCeutics also contributes to infringement of at least Claim 1 of the '497 Patent under 35 U.S.C. § 271(c) inasmuch as the products offered for sale and sold by OptoCeutics are a component of a machine or apparatus used in practicing a patented process, constituting a material part of the '497 Patent's patented methods, knowing the same to be especially made or especially adapted for use in infringement of the '497 Patent.

67.     OptoCeutics also actively encouraged and continues to actively encourage its business partners and/or customers to use its products in an infringing manner.  OptoCeutics encouraged and continues to encourage infringement with a specific intent to cause its business partners and/or customers to infringe.  OptoCeutics's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

68.     OptoCeutics's direct infringement, contributory infringement, and/or inducement of infringement have irreparably harmed Plaintiffs.  On information and belief, OptoCeutics will continue to infringe the '497 Patent unless enjoined.

69.     On information and belief, OptoCeutics has infringed, and continues to infringe, the '497 Patent with full knowledge of the patent and its scope, and OptoCeutics's infringement of the '497 Patent is intentional, knowing, and willful.  *See supra*, ¶¶ 54-56.

70.     OptoCeutics's conduct entitles Plaintiffs to an award of enhanced damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285.

71.     Pursuant to 35 U.S.C. § 284, Plaintiffs are entitled to damages adequate to compensate it for past infringement of the '497 Patent.

72.     This case is "exceptional" within the meaning of 35 U.S.C. § 285, and Plaintiffs are entitled to an award of attorneys' fees.

## CLAIM 3: INFRINGEMENT OF THE '816 PATENT

73.     Plaintiffs reallege and incorporate the allegations of the preceding paragraphs of this complaint as though fully stated herein.

74.     MIT is the owner of and has right, title, and interest in and to the '816 Patent. Cognito has an exclusive license from MIT to make, use, sell, offer to sell and import any product embodying the '816 Patent in and into the United States.  Cognito also has the right to prosecute third party infringement of the '816 Patent.

75.     The claims of the '816 Patent are valid and enforceable.

76.     The '816 Patent claims and describes "[a] method for treating Alzheimer's disease in a subject in need thereof, the method comprising: inducing synchronized gamma oscillations in at least one brain region of the subject, wherein inducing synchronized gamma oscillations comprises non-invasively delivering a visual or auditory signal having a frequency of approximately 35 Hz to approximately 45 Hz to the subject to treat Alzheimer's disease." *See, e.g.*, '816 Patent at Claim 1.

77.     On information and belief, OptoCeutics has been and is now infringing one or more claims of the '816 Patent in the United States by, among other things, directly or through intermediaries, making, using, selling, and/or offering for sale the EVY light device, sound stimulation and headphones, and mobile application, covered by at least Claim 1 of the '816 Patent. For example, these products practice "[a] method for treating Alzheimer's disease in a subject in need thereof, the method comprising: inducing synchronized gamma oscillations in at least one brain region of the subject, wherein inducing synchronized gamma oscillations comprises non-

invasively delivering a visual or auditory signal having a frequency of approximately 35 Hz to approximately 45 Hz to the subject to treat Alzheimer's disease." *See supra*, ¶¶ 33-44.

78.     OptoCeutics infringes the '816 Patent because it uses the claimed methods of the '816 Patent.  For example, OptoCeutics infringes at least Claim 1 of the '816 Patent by using the EVY light device, sound stimulation and headphones, and mobile application.  OptoCeutics is, therefore, directly infringing, literally and/or under the doctrine of equivalents, the '816 Patent.  OptoCeutics is thus liable for direct infringement of the '816 Patent pursuant to 35 U.S.C. § 271(a).

79.     OptoCeutics also contributes to infringement of at least Claim 1 of the '816 Patent under 35 U.S.C. § 271(c) inasmuch as the products offered for sale and sold by OptoCeutics are a component of a machine or apparatus used in practicing a patented process, constituting a material part of the '816 Patent's patented methods, knowing the same to be especially made or especially adapted for use in infringement of the '816 Patent.

80.     OptoCeutics also actively encouraged and continues to actively encourage its business partners and/or customers to use its products in an infringing manner.  OptoCeutics encouraged and continues to encourage infringement with a specific intent to cause its business partners and/or customers to infringe.  OptoCeutics's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

81.     OptoCeutics's direct infringement, contributory infringement, and/or inducement of infringement have irreparably harmed Plaintiffs.  On information and belief, OptoCeutics will continue to infringe the '816 Patent unless enjoined.

82.     On information and belief, OptoCeutics has infringed, and continues to infringe, the '816 Patent with full knowledge of the patent and its scope, and OptoCeutics's infringement of the '816 Patent is intentional, knowing, and willful.  *See supra*, ¶¶ 54-56.

83.     OptoCeutics's conduct entitles Plaintiffs to an award of enhanced damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285.

84.     Pursuant to 35 U.S.C. § 284, Plaintiffs are entitled to damages adequate to compensate it for past infringement of the '816 Patent.

85.     This case is "exceptional" within the meaning of 35 U.S.C. § 285, and Plaintiffs are entitled to an award of attorneys' fees.

## CLAIM 4: INFRINGEMENT OF THE '225 PATENT

86.     Plaintiffs reallege and incorporate the allegations of the preceding paragraphs of this complaint as though fully stated herein.

87.     MIT is the owner of and has right, title, and interest in and to the '225 Patent. Cognito has an exclusive license from MIT to make, use, sell, offer to sell, and import any product embodying the '225 Patent in and into the United States.  Cognito also has the right to prosecute third party infringement of the '225 Patent.

88.     The claims of the '225 Patent are valid and enforceable.

89.     The '225 Patent claims and describes methods for treating dementia or Alzheimer's disease comprising administering a non-invasive visual stimulus to a subject having a frequency of about 30 Hz to about 50 Hz to induce synchronized gamma oscillations in at least the prefrontal cortex and hippocampus of a subject.  *See, e.g.*, '225 Patent at Claim 46.

90.     On information and belief, OptoCeutics has been and is now infringing one or more claims of the '225 Patent in the United States by, among other things, directly or through intermediaries, making, using, selling, and/or offering for sale the EVY light device, sound stimulation and headphones, and mobile application, covered by at least Claim 46 of the '225 Patent.  For example, these products practice "[a] method for treating dementia or Alzheimer's

disease in a subject in need thereof, the method comprising: A) non-invasively delivering chronic visual stimuli having a frequency of about 30 Hz to about 50 Hz to the subject to entrain synchronized gamma oscillations in multiple brain regions of the subject including at least the prefrontal cortex (PFC) and the hippocampus of the subject, wherein A) comprises non-invasively delivering the chronic visual stimuli having the frequency of about 30 Hz to about 50 Hz to the subject to: A1) concurrently entrain synchronized gamma oscillations in the multiple brain regions of the subject including at least the prefrontal cortex and the hippocampus of the subject; A2) coordinate neuronal activity between the multiple brain regions of the subject including at least the prefrontal cortex and the hippocampus of the subject; A3) reduce neurodegeneration in the multiple brain regions of the subject including at least the prefrontal cortex and the hippocampus of the subject; A4) reduce neuroinflammation in the multiple brain regions of the subject including at least the prefrontal cortex and the hippocampus of the subject; A5) ameliorate aberrantly modified genes and proteins involved in at least one of membrane trafficking, intracellular transport, synaptic function, neuroinflammation, apoptotic process, and DNA damage in the multiple brain regions of the subject including at least the prefrontal cortex and the hippocampus of the subject; and A6) enhance learning and memory of the subject." *See supra*, ¶¶ 33-44.

91.     OptoCeutics infringes the '225 Patent because it uses the claimed methods of the '225 Patent.  For example, OptoCeutics infringes at least Claim 46 of the '225 Patent by using the EVY light device, sound stimulation and headphones, and mobile application.  OptoCeutics is, therefore, directly infringing, literally and/or under the doctrine of equivalents, the '225 Patent. OptoCeutics is thus liable for direct infringement of the '225 Patent pursuant to 35 U.S.C. § 271(a).

92.     OptoCeutics also contributes to infringement of at least Claim 1 of the '225 Patent under 35 U.S.C. § 271(c) inasmuch as the products offered for sale and sold by OptoCeutics are a

component of a machine or apparatus used in practicing a patented process, constituting a material part of the '225 Patent's patented methods, knowing the same to be especially made or especially adapted for use in infringement of the '225 Patent.

93.     OptoCeutics also actively encouraged and continues to actively encourage its business partners and/or customers to use its products in an infringing manner.  OptoCeutics encouraged and continues to encourage infringement with a specific intent to cause its business partners and/or customers to infringe.  OptoCeutics's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

94.     OptoCeutics's direct infringement, contributory infringement, and/or inducement of infringement have irreparably harmed Plaintiffs.  On information and belief, OptoCeutics will continue to infringe the '225 Patent unless enjoined.

95.     On information and belief, OptoCeutics has infringed, and continues to infringe, the '225 Patent with full knowledge of the patent and its scope, and OptoCeutics's infringement of the '225 Patent is intentional, knowing, and willful.  *See supra*, ¶¶ 54-56.

96.     OptoCeutics's conduct entitles Plaintiffs to an award of enhanced damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285.

97.     Pursuant to 35 U.S.C. § 284, Plaintiffs are entitled to damages adequate to compensate it for past infringement of the '225 Patent.

98.     This case is "exceptional" within the meaning of 35 U.S.C. § 285, and Plaintiffs are entitled to an award of attorneys' fees.

## CLAIM 5: INFRINGEMENT OF THE '586 PATENT

99.     Plaintiffs reallege and incorporate the allegations of the preceding paragraphs of this complaint as though fully stated herein.

100.    MIT is the owner of and has right, title, and interest in and to the '586 Patent. Cognito has an exclusive license from MIT to make, use, sell, offer to sell, and import any product embodying the '586 Patent in and into the United States.  Cognito also has the right to prosecute third party infringement of the '586 Patent.

101.    The claims of the '586 Patent are valid and enforceable.

102.    The '586 Patent claims and describes a method for treating dementia or Alzheimer's disease comprising administering a combined and aligned auditory and visual stimuli to a subject having a frequency of about 20 Hz to about 60 Hz to induce synchronized gamma oscillations in at least one brain region of the subject.  *See, e.g.*, '586 Patent at Claim 1.

103.    On information and belief, OptoCeutics has been and is now infringing one or more claims of the '586 Patent in the United States by, among other things, directly or through intermediaries, making, using, selling, and/or offering for sale the EVY light device, sound stimulation and headphones, and mobile application, covered by at least Claim 1 of the '586 Patent. For example, these products practice "[a] method for treating dementia or Alzheimer's disease in a subject in need thereof, the method comprising: A) non-invasively delivering combined auditory and visual stimuli having a frequency of 20 Hz to 60 Hz to the subject, wherein the auditory and visual stimuli are synchronously aligned, to induce synchronized gamma oscillations in at least one brain region of the subject."  *See supra*, ¶¶ 33-44.

104.    OptoCeutics infringes the '586 Patent because it uses the claimed methods of the '586 Patent.  For example, OptoCeutics infringes at least Claim 1 of the '586 Patent by using the EVY light device, sound stimulation and headphones, and mobile application.  OptoCeutics is, therefore, directly infringing, literally and/or under the doctrine of equivalents, the '586 Patent. OptoCeutics is thus liable for direct infringement of the '586 Patent pursuant to 35 U.S.C. § 271(a).

28

105.    OptoCeutics also contributes to infringement of at least Claim 1 of the '586 Patent under 35 U.S.C. § 271(c) inasmuch as the products offered for sale and sold by OptoCeutics are a component of a patented machine or apparatus used in practicing a patented process, constituting a material part of the '586 Patent's patented methods, knowing the same to be especially made or especially adapted for use in infringement of the '586 Patent.

106.    OptoCeutics also actively encouraged and continues to actively encourage its business partners and/or customers to use its products in an infringing manner.  OptoCeutics has encouraged and continues to encourage infringement with a specific intent to cause its business partners and/or customers to infringe.  OptoCeutics's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

107.    OptoCeutics's direct infringement, contributory infringement, and/or inducement of infringement have irreparably harmed Plaintiffs.  On information and belief, OptoCeutics will continue to infringe the '586 Patent unless enjoined.

108.    On information and belief, OptoCeutics has infringed, and continues to infringe, the '586 Patent with full knowledge of the patent and its scope, and OptoCeutics's infringement of the '586 Patent is intentional, knowing, and willful.  *See supra*, ¶¶ 54-56.

109.    OptoCeutics's conduct entitles Plaintiffs to an award of enhanced damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285.

110.    Pursuant to 35 U.S.C. § 284, Plaintiffs are entitled to damages adequate to compensate it for past infringement of the '586 Patent.

111.    This case is "exceptional" within the meaning of 35 U.S.C. § 285, and Plaintiffs are entitled to an award of attorneys' fees.

## CLAIM 6: INFRINGEMENT OF THE '759 PATENT

112.     Plaintiffs reallege and incorporate the allegations of the preceding paragraphs of this complaint as though fully stated herein.

113.     Cognito is the owner of and has right, title, and interest in and to the '759 Patent.

114.     The claims of the '759 Patent are valid and enforceable.

115.     The '759 Patent claims and describes a system for treating a symptom of Alzheimer's disease or dementia in a subject in need by, among other things, administering a non-invasive auditory or visual stimulus of 30 to 60 Hz. *See, e.g.*, '759 Patent at Claim 1.

116.     On information and belief, OptoCeutics has been and is now infringing one or more claims of the '759 Patent in the United States by, among other things, directly or through intermediaries, making, using, selling, and/or offering for sale the EVY light device, sound stimulation and headphones, and mobile application, covered by at least Claim 1 of the '759 Patent. For example, these products practice "[a] system for treating a symptom of Alzheimer's disease or dementia in a subject in need thereof, the system comprising:  (a) a stimulus-emitting component capable of providing a non-invasive auditory stimulus or a non-invasive visual stimulus to said subject, wherein said stimulus-emitting component is configured to emit a wave having a frequency band from about 30 to about 60 Hertz (Hz)[.]"  *See supra*, ¶¶ 33-44.

117.     OptoCeutics infringes the '759 Patent because it uses the claimed systems of the '759 Patent.  For example, OptoCeutics infringes at least Claim 1 of the '759 Patent by using the EVY light device, sound stimulation and headphones, and mobile application.  OptoCeutics is, therefore, directly infringing, literally and/or under the doctrine of equivalents, the '759 Patent. OptoCeutics is thus liable for direct infringement of the '759 Patent pursuant to 35 U.S.C. § 271(a).

118. OptoCeutics also contributes to infringement of at least Claim 1 of the '759 Patent under 35 U.S.C. § 271(c) inasmuch as the products offered for sale and sold by OptoCeutics are a component of a patented machine or apparatus used in practicing a patented process, constituting a material part of the '759 Patent's patented methods, knowing the same to be especially made or especially adapted for use in infringement of the '759 Patent.

119. OptoCeutics also actively encouraged and continues to actively encourage its business partners and/or customers to use its products in an infringing manner. OptoCeutics has encouraged and continues to encourage infringement with a specific intent to cause its business partners and/or customers to infringe. OptoCeutics's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

120. OptoCeutics's direct infringement, contributory infringement, and/or inducement of infringement have irreparably harmed Plaintiffs. On information and belief, OptoCeutics will continue to infringe the '759 Patent unless enjoined.

121. On information and belief, OptoCeutics has infringed, and continues to infringe, the '759 Patent with full knowledge of the patent and its scope, and OptoCeutics's infringement of the '759 Patent is intentional, knowing, and willful. *See supra*, ¶¶ 54-56.

122. OptoCeutics's conduct entitles Plaintiffs to an award of enhanced damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285.

123. Pursuant to 35 U.S.C. § 284, Plaintiffs are entitled to damages adequate to compensate it for past infringement of the '759 Patent.

124. This case is "exceptional" within the meaning of 35 U.S.C. § 285, and Plaintiffs are entitled to an award of attorneys' fees.

## CLAIM 7: INFRINGEMENT OF THE '072 PATENT

125.    Plaintiffs reallege and incorporate the allegations of the preceding paragraphs of this complaint as though fully stated herein.

126.    Cognito is the owner of and has right, title, and interest in and to the '072 Patent.

127.    The claims of the '072 Patent are valid and enforceable.

128.    The '072 Patent claims and describes a method for treating a symptom of Alzheimer's disease or dementia in a subject in need by, among other things, administering a visual stimulus.  *See, e.g.*, '072 Patent at Claim 1.

129.    On information and belief, OptoCeutics has been and is now infringing one or more claims of the '072 Patent in the United States by, among other things, directly or through intermediaries, making, using, selling, and/or offering for sale the EVY light device, sound stimulation and headphones, and mobile application, covered by at least Claim 1 of the '072 Patent. For example, these products practice "[a] method for treating mild cognitive impairment or Alzheimer's disease or benefiting a cognitive function of a brain of a subject in need thereof via a system … (a) using a first light source to generate a first light pulse and using a second light source to generate a second light pulse … (c) … wherein the first light pulse and the second light pulse are emitted at a 40 Hertz (Hz) frequency, thereby slowing a progression of mild cognitive impairment or Alzheimer's disease, or thereby benefiting the cognitive state or function of the brain of the subject[.]"  *See supra*, ¶¶ 33-44.

130.    OptoCeutics infringes the '072 Patent because it uses the claimed systems of the '072 Patent.  For example, OptoCeutics infringes at least Claim 1 of the '072 Patent by using the EVY light device, sound stimulation and headphones, and mobile application.  OptoCeutics is,

therefore, directly infringing, literally and/or under the doctrine of equivalents, the '072 Patent. OptoCeutics is thus liable for direct infringement of the '072 Patent pursuant to 35 U.S.C. § 271(a).

131.    OptoCeutics also contributes to infringement of at least Claim 1 of the '072 Patent under 35 U.S.C. § 271(c) inasmuch as the products offered for sale and sold by OptoCeutics are a component of a patented machine or apparatus used in practicing a patented process, constituting a material part of the '072 Patent's patented methods, knowing the same to be especially made or especially adapted for use in infringement of the '072 Patent.

132.    OptoCeutics also actively encouraged and continues to actively encourage its business partners and/or customers to use its products in an infringing manner. OptoCeutics has encouraged and continues to encourage infringement with a specific intent to cause its business partners and/or customers to infringe. OptoCeutics's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

133.    OptoCeutics's direct infringement, contributory infringement, and/or inducement of infringement have irreparably harmed Plaintiffs. On information and belief, OptoCeutics will continue to infringe the '072 Patent unless enjoined.

134.    On information and belief, OptoCeutics has infringed, and continues to infringe, the '072 Patent with full knowledge of the patent and its scope, and OptoCeutics's infringement of the '072 Patent is intentional, knowing, and willful. *See supra*, ¶¶ 54-56.

135.    OptoCeutics's conduct entitles Plaintiffs to an award of enhanced damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285.

136.    Pursuant to 35 U.S.C. § 284, Plaintiffs are entitled to damages adequate to compensate it for past infringement of the '072 Patent.

137.    This case is "exceptional" within the meaning of 35 U.S.C. § 285, and Plaintiffs are entitled to an award of attorneys' fees.

## DEMAND FOR A JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment as follows:

a.    That OptoCeutics has infringed and is infringing, directly and indirectly, the '490 Patent, '497 Patent, '816 Patent, '225 Patent, '586 Patent, '759 Patent, and '072 Patent;

b.    That Plaintiffs be granted injunctive relief against OptoCeutics and its officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, to prevent the recurrence of the infringing activities complained of herein, including ceasing manufacture, use, sale, offering for sale, and importation of the EVY light device, sound stimulation and headphones, and mobile application, ceasing contribution to and/or inducement of others to do the same, and for all further proper injunctive relief pursuant to 35 U.S.C. § 283;

c.    That OptoCeutics accounts for and pays to Plaintiffs all damages and costs incurred by Plaintiffs, caused by OptoCeutics's past infringing activities complained of herein;

d.    That OptoCeutics has willfully infringed the '490 Patent, '497 Patent, '816 Patent, '225 Patent, '586 Patent, '759 Patent, and '072 Patent, and an

increase in the damages award to Plaintiffs of up to three times the amount assessed, pursuant to 35 U.S.C. § 284;

e.     That Plaintiffs be granted pre-judgment and post-judgment interest on the damages;

f.     That this Court declare this case exceptional and award Plaintiffs reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.     That Plaintiffs be granted such other and further relief as the Court may deem just and proper under the circumstances.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Tung-On Kong
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Tel:  (415) 947-2000

Neil N. Desai
WILSON SONSINI GOODRICH & ROSATI
953 East Third Street
Suite 100
Los Angeles, CA 90013
Tel:  (323) 210-2900

Mark A. Hayden
WILSON SONSINI GOODRICH & ROSATI
31 West 52nd Street
Fifth Floor
New York, NY 10019
Tel:  (212) 999-5800

Dated:  January 6, 2026
12634881 / 25428.00001

By:  */s/ David E. Moore*
       David E. Moore (#3983)
       Bindu A. Palapura (#5370)
       Chamyra L. Upshur (#7344)
       Hercules Plaza, 6th Floor
       1313 N. Market Street
       Wilmington, DE  19801
       Tel:  (302) 984-6000
       dmoore@potteranderson.com
       bpalapura@potteranderson.com
       cupshur@potteranderson.com

*Attorneys for Plaintiffs Cognito*
*Therapeutics, Inc. and Massachusetts*
*Institute of Technology*

12634881v.1